# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. 14 CR 579 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| JOSUE VARGAS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

After a jury trial, Defendant Josue Vargas ("Defendant") was convicted of one count of possession of cocaine, in violation of 21 U.S.C. § 841(a)(1), and one count of distribution of cocaine, in violation of the same statute. Before the Court is Defendant's motion pursuant to Federal Rule of Criminal Procedure 33 for a new trial. For the following reasons, the motion is denied.

## I. BACKGROUND

Defendant was arrested on October 10, 2014; the day after Chicago police seized approximately eight kilograms of cocaine from his Freightliner semi-truck. When the cocaine was seized, the semi-truck was parked in a parking space that Defendant leased from a third-party. On April 24, 2015, the Court found that "Defendant's Fourth Amendment rights were not violated at any time before or during the seizure of the drugs." See Opinion and Order 10, ECF No. 77. Accordingly, the Court denied Defendant's motion to suppress evidence of the seized cocaine.

At trial the government called to the stand the local Chicago police officer who seized the cocaine. He testified about how he received a call from the Ohio State Trooper who had discovered three kilograms of cocaine in Luis Hueter's ("Hueter") minivan during a highway

traffic stop. During the stop, Hueter told the Ohio State Trooper that he bought the cocaine from Defendant the night before and that he had met Defendant at his Freightliner semi-truck to get the cocaine. Hueter gave the location of the parking lot and described Defendant's semi-truck. In real-time during the traffic stop in Ohio, the local police officer went to the lot, identified the semi-truck, snuck into the secure parking lot while the gate was open, and used his drug-sniffing dog to smell around the semi-truck—who quickly alerted that drugs were present. The local police officer called for back-up and waited for them to arrive. When back-up arrived, the law enforcement team broke a small window on the semi-truck, entered the cabin of the semi-truck, and discovered the eight kilograms of cocaine in an unlocked storage bin just behind the driver's seat. Each kilogram of cocaine was tightly wrapped in separate plastic wrappings. Within the bin, the eight packages of cocaine were in a red Cracker Barrel bag. The police then documented the seizure of the cocaine by taking photographs. The initial discovery and eventual seizure happened within a matter of hours of each other because Hueter's statements to the Ohio State Troopers lead the police in Chicago directly to the larger drug bust. A warrant was not obtained at any time in the process.

The government later called Hueter to testify. He verified that it was he who provided the information leading to the cocaine found in Defendant's semi-truck and that he received a reduced sentence for his state-court conviction in Ohio because of his cooperation in this case. Defendant's attorney was effective in cross-examining Hueter, highlighting several times when Hueter provided inconsistent statements. His statements made before the grand jury varied from what he told law enforcement previously, and his statements at trial seemed to conflict with or differ from what he had told the police initially during the traffic stop.

But some things about Hueter's rendition of what occurred during those important days in October of 2014 remained infallible. He booked a one-way ticket from New Jersey to Chicago. He rented a minivan upon his arrival in Chicago. He met up with Defendant on October 8, 2014. He bought cocaine from Defendant. He was apprehended the next day by Ohio State Troopers because they found three kilograms of cocaine sealed in the console of the minivan that he had rented.

Hueter was not a well-educated man and worked as an auto mechanic. It was hard to discern whether he had trouble remembering things or whether he was having trouble understanding the defense attorney's questions. He spoke Spanish as his primary language and testified with the use of an interpreter. Many of the defense attorney's questions were convoluted and must have been difficult for Hueter to follow. Yet, the defense attorney relentlessly asked Hueter questions about the cooperation agreement that he signed in conjunction with his plea agreement in his state court criminal proceedings. The defense attorney also repetitively asked Hueter about his understanding of the legal process in his state court proceedings; his understanding was minimal at best. So, the Court eventually required the entire plea agreement to be published to aid the jury in understanding what occurred in Hueter's state court criminal proceedings. When the defense attorney's questioning of Hueter stopped progressing to new topics and the attorney disregarded the Court's rulings, the Court terminated counsel's cross-examination. By the admissions of both members of Defendant's legal team, the cross-examination of Hueter had lasted over the course of two days, totaling somewhere between 2.5 and 3 hours by that point. In an abundance of caution, the government recalled Hueter to the stand a few witnesses later and provided defense counsel another opportunity to cross-examine Hueter.

In total, the government put on eight witnesses at trial. One of which testified about how Defendant's fingerprints were found on the plastic wrapping surrounding the cocaine and on items near where the cocaine was found. A couple of Defendant's preserved fingerprints were found on the inside area of the plastic wrap tightly encasing the cocaine packaging. Defendant never contested that the substance seized was in fact cocaine.

In his defense, Defendant called four witnesses in an effort to present and elaborate story originating with his upbringing in a small town in Guatemala. According to Defendant, he was simply helping his friends purchase, store, and transport heavy machinery purchased from auctions throughout the Midwest back to Guatemala. He admitted to being in the parking lot on October 8, 2014, but claimed to know nothing about the cocaine found in his truck. Ultimately, the jurors did not believe Defendant's version of the story and they delivered a guilty verdict on both counts on June 27, 2016.

## II. DISCUSSION

### A. Defendant's Preliminary Request

As a preliminary matter, Defendant has asked to supplement his motion once the transcript is available and to file a memorandum with supporting legal authority at some undefined later date. Regarding the availability of the trial transcript, the Court finds Defendant's request disingenuous. The Court has inquired with the Court Reporter about the availability of transcripts and is informed that the transcripts can be prepared and available almost the same day as the in-court hearing. The Court has also tested this inquiry and found it to be true. The Court received transcripts from the Court Reporter weeks ago for the purpose of issuing an Order to Show Cause to Defendant's attorney on a distinct issue.

Furthermore, on July 5, 2016 at 6:27pm, the Court Reporter emailed Defendant's attorneys four volumes of trial transcripts. The electronic copies of the four volumes of transcripts include everything that was said from opening statements through the testimony of David Ostrow, Defendant's final witness. The emailed transcripts include Hueter's testimony in its entirety—his direct, his cross, his redirect, his recross, his second recross, and his second redirect. Neither of Defendant's two attorneys confirmed receipt of the transcripts. But it seems unlikely that they did not receive them because an undeliverable message was not returned from any of the four email addresses to which the Court Reporter sent the transcripts. Given the rapid production and availability of the transcripts, this request is denied.

Defendant's request to file a secondary memorandum with case law is also denied because he has had two weeks to prepare this post-trial motion and he provides no explanation as to why he was prevented from providing case law in the current motion. Two weeks is the time allowed by rule and the Court sees no grounds to change that in Defendant's case. See Fed. R. Crim. P. 33(b)(2); see also Eberhart v. United States, 546 U.S. 12, 19 (2005).

## B. Defendant's Arguments

In his motion, Defendant argues that he received an unfair trial and provides six reasons in support of his argument. As previously mentioned, these reasons are void of any citation to legal authority; nothing from the United States Constitution, state or federal statutes, federal or local rules, or any case law is provided to buttress them. Nonetheless, Defendant contends that the Court erred in the following six ways: (1) the Court's denial of his motion to suppress was erroneous; (2) the Court's limitation of Hueter's testimony on his prior statements to law enforcement was erroneous; (3) the Court's curtailment of Hueter's testimony was erroneous; (4) the Court's requirement that the Hueter's plea agreement be admitted in to evidence was

5

erroneous; (5) the Court's repetitive rulings that defense counsel must lay a better foundation during questioning was erroneous; and (6) the Court's differential treatment towards the prosecutors were erroneous. The government has responded to each issue raised by Defendant with a memorandum that cites the Sixth Amendment, the Federal Rules of Evidence, and relevant case law. The Court addresses each of these contentions in turn.

## C. Standard of Decision

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed R. Crim. P. 33. "[C]ourts have interpreted the rule to require a new trial 'in the interests of justice' in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." United States v. Kuzniar, 881 F.d 466, 470 (7th Cir. 1989). However, "[a] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994). To overturn the jury's finding of a defendant's guilt, the court must find that the jury's "verdict is so contrary to the weight of the evidence that a new trial is required in the interest of justice." United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999).

## B. The Merits of Defendant's Motion for a New Trial

### 1. Review of Defendant's Motion to Suppress

A criminal defendant cannot pursue an interlocutory appeal of an order denying his motion to suppress before his trial. Di Bella v. United States, 369 U.S. 121, 131 (1962). Instead, he must wait to appeal until after final judgment has been entered in his case. United States v. Dorfman, 41 F.3d 266, 267 (7th Cir. 1982). Here, Defendant tries to circumvent the long-standing precedent by asking this Court to reconsider its pretrial decision. Defendant's request

does not cite any Rule of Federal Criminal Procedure or case law that permits such a secondary review. Defendant contests the Court's pretrial denial of his motion to suppress without making any new arguments, raising any new issues, or introducing any new evidence. Instead, he simply incorporates his previous briefs and rehashes his previous challenge to the constitutionality of the seizure. See Mot. New Trial 2, ECF No. 119 ("The Court should have granted Mr. Vargas's suppression motion for the reasons stated at Dkt #59 and 72, and in open court."). The Court stands by its decision in its April 24, 2015 Opinion and Order and finds no need to elaborate upon, or change, the analysis as written in the ten pages of the earlier order. Defendant's challenge of the denial of his motion to suppress is best-suited for his forthcoming appeal; therefore, the Court rejects Defendant's first argument.

### 2. The Court's Limitation of Questions About Hueter's Inconsistent Statements

Defendant's next argument is comprised of two parts. First, the Court should have allowed counsel to ask Hueter about inconsistent statements that he made to law enforcement officers. Second, because the Court prevented such questioning, Defendant was deprived of his Sixth Amendment[1] right to confront the witness testifying against him. There are several problems with each part of Defendant's argument.

First, Defendant makes the generic claim that his counsel was prevented "from asking question [sic] about certain inconsistent statements Mr. Hueter had previously made to law enforcement officers." Mot. New Trial 2. Defendant does not identify which of his counsel's questions during cross-examination that he is referring to, obviously because he has not referenced the trial transcript. Defendant does not indicate what Hueter's inconsistent statements actually were. And Defendant does not identify which law enforcement officer to whom Hueter

---

[1] Defendant does not actually cite the Sixth Amendment, but the Court gleans as such because he refers to "the confrontation clause" being violated. Mot. New Trial 3.

made the statement. Defendant's vagueness is a problem because during the course of Hueter's and Defendant's criminal proceedings Hueter has made statements directly and indirectly to Ohio state troopers, prosecutors in Ohio, local police officers in Chicago, FBI agents, and federal prosecutors. The Court will not speculate about where in the record the Court allegedly deprived Defendant of the opportunity to confront the witness, what the witness might have said, or what was said to whom. The Court finds this portion of Defendant's argument is too perfunctory and undeveloped to address. See United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority are waived....").

The second portion of this argument is not any better. Defendant claims that because Hueter was such a "paramount" witness in the government's case that the Court should have "afforded every opportunity" for Defendant to cross-examine Hueter about every statement he ever made concerning this case. Mot. New Trial 3. Surpassing its eighty-third year anniversary, it has been the plain rule of law in this country that "[i]n a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 469 (1933); see also United States v. Young, 470 U.S. 1, 10 (1985). The Sixth Amendment does not afford an unlimited opportunity to confront the government's witnesses. United States v. Jackson, 51 F.3d 646, 652 (7th Cir. 1995). There is not a constitutional right to ask questions of witnesses on peripheral issues, like questions impeaching a witness. Id. Likewise, "the trial court has discretion to impose reasonable limitations on cross-examination based upon concerns about, *inter alia,* harassment, confusion of issues, and repetitive or marginally relevant interrogation." United States v. Spivey, 841 F.2d 799, 802-03 (7th Cir. 1988).

In this case, defense counsel questioned Hueter for a duration of time between 2.5 and 3 hours. The cross-examination spanned over the course of two days, and eventually the questions became stagnant and repetitious. To aid the jury, the Court told defense counsel that his questions of Hueter would conclude if he did not progress to a more relevant and permissible inquiry. Defense counsel did not move-on, so the Court concluded the cross-examination. Even if the Court's cessation of the cross-examination was too abrupt, the error was harmless. Later in the trial, with an abundance of caution, the government recalled Hueter to the stand to provide defense counsel with additional time to question the witness. Defense counsel then concluded his questioning of Hueter voluntarily after another hour or two of questioning. Defendant cannot now legitimately claim that he was deprived of a meaningful opportunity to confront Hueter through the means of cross-examination. Moreover, at the conclusion of trial the Court instructed the jurors that they "must consider [Hueter's] testimony with caution and great care"—further safeguarding against any possibility of undue prejudice to Defendant. This second argument does not justify vacating the jury's verdict and providing Defendant a new trial.

### 3. The Court's Curtailment of the Initial Cross-Examination of Hueter

Defendant's third argument focuses on the Court's termination of defense counsel's cross-examination of Hueter and once again impliedly frames the issue around the Sixth Amendment. Defendant contends that the Court's ruling put defense counsel in such a poor light in the minds of the jurors that the ruling amounted to a deprivation of his right to effective assistance of counsel. This argument is ridiculous. For starters, "[t]he benchmark for judging any claim of ineffectiveness must be whether <u>counsel's conduct</u> so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). The Court's ruling does not form

the basis of determining whether defense counsel was reasonably effective. As the Court already discussed, defense counsel did a good job of destroying the credibility of Hueter. And throughout his representation of Defendant, defense counsel's performance has been at or above what is required to provide reasonably effective legal assistance.

Furthermore, the Court has explicit authority to control the presentation of evidence during trial. See Fed. R. Evid. 611. By precedent, the Court has "wide discretion to determine the role that [it] will play during the course of a trial." United States v. Washington, 417 F.3d 780, 783 (7th Cir. 2005) (citation omitted). "A district judge is free to interject during a direct or cross-examination to clarify an issue, to require an attorney to lay a foundation, or to encourage an examining attorney to get to the point." Id. at 784 (citing Fed. R. Evid. 614(b); United States v Reynolds, 189 F.3d 521, 528 (7th Cir. 1999)). However, the Court "must refrain from 'assum[ing] the role of an advocate for either side.'" Id. (quoting United States v. Martin, 189 F.3d 547, 553 (7th Cir. 1999)). Reversible error can occur if the Court "conveyed a bias regarding [Defendant's] honesty or guilt," and Defendant "has shown serious prejudice" resulting from the Court's comment. Id.

Here, defense counsel questioned Hueter on three separate occasions over the course of two days, totaling over four hours in time. Defense counsel spent an exorbitant amount of time on matters that had no bearing on what occurred October 8th and 9th of 2014—the relevant events with regard to Defendant's guilt. The Court's limitation of defense counsel's cross-examination was within its discretion under Fed. R. Evid. 611(a). See also United States v. Hayward, 6 F.3d 1241, 1251 (7th Cir. 1993) (affirming judge's curtailment of defense counsel's cross-examination), overruled on other grounds by United States v. Colvin, 353 F.3d 569 (7th Cir. 2003); see also United States v. Weiner, 578 F.2d 757, 766 (9th Cir. 1978) ("The trial court

has a duty to control cross-examination to prevent it from unduly burdening the record with cumulative or irrelevant matter. This duty includes a specific duty to prevent counsel from confusing the jury with a proliferation of details on collateral matters.") (internal citations omitted).

But as the government points out, there are rare cases in which reversible error occurs when a judge's conduct or comments in the presence of the jury discredit counsel so severely that the client is effectively denied the right to adequate legal representation. See, e.g., United States v. Dellinger, 472 F.2d 340, 386-87 (7th Cir. 1972), Cooper v. Casey, 97 F.3d 914, 919 (7th Cir. 1996). However, this case is not one of those rarities. The Court simply instructed defense counsel to comply with its evidentiary rulings and it implemented a reasonable sanction when defense counsel refused to follow the Court's rulings. The Court made no comments to discredit counsel or harm his reputation in the eyes of the jury. To mitigate any unwarranted prejudice to Defendant from the Court's ruling, the Court instructed the jurors before deliberations that they "should not take anything I said or did during the trial as indicating that I have an opinion about the evidence or about what I think you verdict should be." And finally, the Court never commented about the credibility of Hueter, never provided an opinion about the reliability of evidence introduced during trial, and never showed a bias towards Defendant. The Court rejects Defendant's third argument as grounds for a new trial.

### 4. The Court's Admission of Hueter's Plea Agreement

Defendant argues that the Court erroneously allowed inadmissible hearsay into the trial; the alleged hearsay was the agreement to plead guilty that Hueter signed in his state-court criminal proceeding. This argument is without merit. The details of the terms and conditions in a cooperating witness's plea agreement are routinely admitted into evidence. See, e.g., United

States v. Edwards, 581 F.3d 604, 609-611 (7th Cir. 2009); United States v. Clarke, 227 F.3d 874, 879 (7th Cir. 2000); United States v. Collins, 223 F.3d 502, 510 (7th Cir. 2000); United States v. Hofer, 995 F.2d 746, 747 (7th Cir. 1993); United States v. Walker, 871 F.2d 1298, 1303 (6th Cir. 1989); United States v. Roan Eagle, 867 F.2d 436, 443-44 (8th Cir. 1989); United States v. LeFevour, 798 F.2d 977, 983-84 (7th Cir. 1986); United States v. Henderson, 717 F.2d 135, 137-38 (4th Cir. 1983); United States v. Hedman, 630 F.2d 1184, 1198-99 (7th Cir. 1980). This nationally-approved practice allows the jurors a complete view of the witness's criminal background and the context upon which he is testifying. LeFevour, 798 F.2d at 983. With this additional information they can better judge the witness' credibility, his motivation for testifying, any inherent bias, and the truthfulness of his statements. Id.

In this case, defense counsel briefly handed Hueter a copy of his cooperation agreement and began questioning him about it. Counsel then began asking Hueter about selective portions in his plea of guilty and his cooperation agreement. However, counsel did not move to admit the cooperation agreement into evidence until prompted by the Court. Defense counsel did not want to publish the cooperation agreement to the jury. The Court took judicial notice of the plea agreement as a public record[2] and allowed the jurors to view the plea agreement in its entirety; which the Court may do. See Scholes v. Lehmann, 56 F.3d 750, 762 (7th Cir. 1995) (holding that it is proper for the district court to take judicial notice of a plea agreement). The introduction of the plea agreement was never used to improperly bolster the credibility of Hueter; it simply provided the jury complete information to aid them in evaluating the veracity of Hueter's testimony. Moreover, because Hueter testified pursuant to a cooperation agreement, the Court instructed the jurors that they could give whatever weight they chose to Hueter's testimony,

---

[2] The Government's brief also discusses several other evidentiary rules that would permit the admissibility of Hueter's plea agreement, but because the Court did not refer to those during the trial, it does not rely on them now.

12

"keeping in mind that [they] must consider that testimony with caution and great care." No error occurred in the Court's admission of the plea agreement, much less an error harmful enough to warrant a new trial.

### 5. The Court's Instruction to Defense Counsel to Lay a Better Foundation

Throughout the trial the Court interrupted defense counsel's examination of witnesses to require counsel to lay a better foundation to aid the jury's understanding of the testimony. Defendant's fifth argument is that the Court's intermittent interruptions "broke the flow of the dialogue between attorney and witness" and that such interruptions require a new trial. Mot. New Trial 4. As mentioned before, Federal Rule of Evidence 614 and controlling law in this Circuit allow the Court "to interject during a direct or cross-examination to clarify an issue, to require an attorney to lay a foundation, or to encourage an examining attorney to get to the point." Washington, 417 F.3d at 784. In fact, in one case, the Seventh Circuit affirmed the district judge's decision to permit the jurors to ask 127 questions to witnesses throughout a trial, notwithstanding some glitches in the process. See SEC v. Koenig, 557 F.3d 736, 742 (7th Cir. 2009). Defendant does not identify, nor can he, any legal authority that guarantees attorneys the right to solely ask questions of witnesses in a continuous and unfettered manner. In fact, quite the opposite is true. "The examination of witnesses requires judicial supervision." United States v. Verner, 916 F.2d 1268, 1272 (7th Cir. 1990). Furthermore, the Court's evidentiary rulings were fair and impartial. As the government aptly describes, the Court interrupted similarly during the prosecutor's cross-examination of Defendant. The Court did not err when it asked defense counsel to provide additional foundation or clarify an issue while conducting his examinations.

### 6. The Court's Treatment of the Attorneys

Defendant's final argument is that the Court treated the prosecutors more favorably than defense counsel. Defendant tries to highlight the disparity by referencing a single instance during the cross-examination of Hueter when defense counsel wanted to use "a specific report" to refresh Hueter's memory.

Any writing can be used to refresh a witness's recollection, however "[c]aution must be exercised to insure that the document is actually being used for purposes of refreshing and not for purposes of putting words in the mouth of the witness." Esperti v. United States, 406 F.2d 148, 150 (5th Cir. 1962); see also United States v. Vasquez, 635 F.3d 889, 895 (7th Cir. 2011). That decision is entrusted to the trial judge. Vasquez, 635 F.3d at 895. Upon review of the transcript, defense counsel tried to refresh the recollection of Hueter twice during cross-examination.

First, defense counsel showed Hueter his airline ticket to refresh his memory of what airline he flew to Chicago and what time he arrived; which the Court permitted. This sequence cannot possibly be the instance that Defendant has referred.

Next, defense counsel tried to ask Hueter about statements that he made to federal agents in December of 2014. There was a report documenting the December 2014 interview, but it had not yet been introduced into evidence. Defense counsel did not show the report to Hueter, but wanted to ask Hueter about statements he made during that interview. During this process, the Court interjected with rulings multiple times because defense counsel's questions either lacked a proper foundation, were argumentative, solicited answers barred by Federal Rule of Evidence 403, or attempted to solicit inadmissible hearsay. The apparent intent of defense counsel was to impeach Hueter on prior inconsistent statements using the December 2014 report. Through the

14

method of refreshing memory, defense counsel wanted to introduce the substance of the report. The problem was that Hueter did not make any statements in the report; the report was a summary transcribed by a federal agent.

"The burden of proving that notes reflect a witness's own words rather than the notetaker's characterization falls on the party seeking to introduce the notes." United States v. Schoenborn, 4 F.3d 1424, 1427 (7th Cir. 1993). Here, neither defense counsel nor the government called the author of the report to the stand. While questioning Hueter, defense counsel did not ask Hueter whether he reviewed and signed the report to verify its accuracy. By itself, the federal agent's recordation of Hueter's statement certainly did not represent a prior statement of Hueter. See id. ("A third party's characterization of a witness's statement 'does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.'") (quoting United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992)). To introduce the statements in the report, Defendant had to call the author of the report and Hueter to the stand and both individuals needed to testify to the accuracy of the report. United States v. Green, 258 F.3d 683, 689 (7th Cir. 2005) ("We have held that when a witness's statement is recorded by another, both the witness and the one transcribing the statement must testify as to the accuracy of the report to establish that the statement is the witness's past recollection recorded under Rule 803(5).") (citing Schoenborn, 4 F.3d at 1427-28). This did not happen. Defense counsel attempted to broach substantive evidence under the guise of refreshing recollection, a tactic that the law does not permit.

As a comparison to the prosecutors' actions, Defendant alleges that the Court allowed the government to do "the exact same thing when cross-examining a defense witness...." Mot. New Trial 5. The record is absent any instance where the government tried to impeach a defense

witness using inadmissible hearsay under the pretense of refreshing recollection. Defendant's statement that the Court treated opposing counsel favorably during the same circumstances is a misrepresentation of the record.

### III. Conclusion

At trial, the government produced overwhelming evidence of Defendant's guilt on Counts I and II of the indictment. The Court's rulings during the course of the proceeding simply followed federal procedural rules, federal evidentiary rules, and controlling precedent. Defendant received a fair trial. Therefore, Defendant's motion for a new trial pursuant to Rule 33 is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 27, 2016